**STATE ex STEINLE et v FAUST et**

Ohio Appeals, 6th Dist, Ottawa Co

Decided Feb 1, 1937

Harry Garn, Fremont, for relators.

Reams, Bretherton & Neipp, Toledo, and N. C. Rosentreter, Prosecuting Attorney, Port Clinton, for respondents.

## OPINION

By TAYLOR, J.

This case arises on a petition for a writ of mandamus filed in this court by the relators against the members of the Board of Education of Port Clinton Exempted School District of Ottawa County, praying that a writ of mandamus issue commanding the respondent board of education to award to relators a certain contract for the erection and construction of an addition and improvement of the high school building in that district, and to enter into a contract with relators for the performance of the same. An alternative writ was then issued, and respondents filed an answer thereto.

The petition at the time of filing alleged in substance that the respondents as such board of education had determined to enlarge and improve the high school in question at a cost to exceed $3,000 and had advertised for bids thereon; that relators and one Fred Schultz, with others presented bids for the erection and construction of this improvement, all of which were opened and considered by the board, but that the bid of Schultz was not accompanied by a bond or certified check in an amount not less than five per cent of his bid, while the bid of relators was accompanied by a bond of not less than five per cent of the amount of their bid, which

bond was conditioned as provided by law. The petition continued that the bid of relators is the lowest responsible bid, accompanied by a bond as provided by law, which was submitted to the board of education, and that relators are entitled to have the contract; but that the respondents will not award this contract to relators and are threatening to and will award it to Schultz unless this writ of mandamus issues.

Respondents demurred generally to this petition, which demurrer was overruled. Respondents thereafter filed an answer. This answer admitted that respondents had received and opened bids for this work, including those of the relators and of Schultz, and that the bid of relators was accompanied by a bond in an amount not less than five per cent of their bid. The answer then stated that the published notice to bidders contained a stipulation that all bids were to be acceptable to the federal Public Works Administration through the administrator at Columbus, Ohio; that on December 15, 1936, the board of education passed a resolution authorizing the entering into of a contract with the relators for this work; that the contract was signed, as authorized, by the president and clerk of the board of education and also by the relators, and thereupon was tendered to the Public Works Administration for its approval, but the director of Public Works Administration refused to approve the contract. Thereafter on January 10, 1937, the board of education passed a resolution authorizing its president and clerk to enter into a contract with Fred Schultz, but before this later contract was executed by the board of education the present petition in mandamus was filed.

On return day of the writ the parties appeared in court, and Fred Schultz likewise appeared and moved the court for leave to be made a party respondent and to plead herein, on the ground that he has a material interest in the contract referred to in the petition. Doubting his right to be made a party respondent, this court nevertheless permitted him to enter his appearance, whereupon Schultz filed a general demurrer to the petition, which was also overruled, and then filed an answer in which he alleged that the board of education, on January 10, 1937, had accepted his bid in the amount of $89.358, that this was the lowest responsible bid and was accompanied by a bond in the sum of $4,500.

We still doubt the propriety of making

Schultz a party respondent herein, but, as he himself applied for leave to become a party to this suit, and has thus voluntarily submitted himself to the jurisdiction of this court, we have decided to permit him to remain as a party respondent hereto in order that the material interest which he claims to have in this contract may be examined and his rights, if any, in the subject-matter of the controversy be determined.

Following the overruling of the demurrers above referred to, the cause was assigned for hearing on the merits, at which time relators, by leave of court, amended their petition by interlineation so as to allege, partly in conformity with the answer of the board of education, that the work had actually been awarded relators and a contract for the same entered into and a performance bond given according to law, but that thereafter, on January 10, 1937, the respondent board had attempted to rescind the same.

On the hearing the essential facts shown were the following:

That the project was to be financed in considerable part by a grant of money from the federal government through its Public Works Administration; that the notice to bidders stated that the contract would not be awarded until the state director of Public Works Administration should authorize the award, and that each bidder was required to give a bid bond or else a certified check in the amount of five per cent of the bid tendered as guaranty that the bidder would, if awarded the contract, enter into a bona fide contract with the board of education.

The bid of relators was a base bid of $89,898, with alternates A to J inclusive, of which alternates E and F would decrease the base bid by $627, while A and H would increase it by $1,735. With these four alternates adopted, the total bid of relators for this work was $91,006. The bond accompanying this bid was for $4,800, which was more than five per cent.

The base bid of Schultz was for $88,400. His deductions for alternates E and F were $542, and his addition for alternates A and H were $3,700, or a net increase of $3,158. This added to his base bid would make a total of $91,558, which was accompanied by a bid bond for $4,500, or less than five per cent thereof.

The board of education adopted alternates A, E, F and H, in letting the contract.

The first question, therefore, is whether the provisions of §7623, **GC,** that each bid "shall be accompanied by a bid bond or by a certified check * * * said bond or check to be in no case less than five per cent of the amount of the bid" relates only to the amount of the base bid or to any possible combination of the base bid and alternates which the board of education might see fit to adopt in awarding the contract. (Emphasis ours).

We are satisfied that the true construction of this mandatory requirement is that the bond or check accompanying the bid must be for a sum not less than five per cent of the highest amount of which the bid is susceptible. Each alternate is as much a part of the contractor's bid as the base bid itself. The contractor offers to enter into a contract which, at the option of the board of education, may include any or all of these alternates. To hold otherwise would be to defeat the purpose of the statute by permitting a low base bid with corresponding increases in the amounts bid on the alternates and thus deprive the board of education of a considerable part of the protection which it is the design of the statute to afford.

It follows that the bid bond of Schultz was not sufficient in amount, and the board of education was without power or authority to consider it.

We next consider the uncontroverted allegation in the answer of the board of education that the Public Works Administration refused approval of the contract with the relators. Pursuant to this disapproval, the board of education, on January 10, 1937, without any rescission of the contract already made with the relators, adopted a motion to award the contract to Schultz, including alternates E, F, G and H, at a total of $89,358, as compared with alternates A, E, F and H adopted for the contract with relators.

The right of the board of education to disregard its prior contract with the relators must now be considered. This contract had not only been signed by all parties thereto, but it contained the necessary certificate under §5625-33(d), **GC,** from the clerk of the board of education, as the fiscal officer thereof, under §5625-1(d), **GC,** that the amount required to meet this contract has been lawfully authorized for such purpose and is in the treasury or in process of collection. This certificate, by the terms of the statute, is binding upon the board of education as to the facts set forth therein.

The only ground upon which such dis-

regard of the first contract can be sustained is the provision in the notice to bidders that no contract shall be awarded to the lowest responsible bidder until the state director of the federal Public Works Administration shall have authorized the award.

This condition or provision was an absolute nullity. The board of education is created by and derives all of its powers and duties from the state of Ohio as expressed in the acts of the General Assembly relating thereto. Education is purely a matter of state concern, and no rights, powers or duties concerning it have been either expressly or impliedly granted to the federal government within the limitations of the Tenth Amendment to the Constitution of the United States. Whether the power to supervise and approve or reject contracts for the erection or improvement of school buildings could be delegated by the state of Ohio to the federal government or any of its agencies we do not decide, because an examination of the laws of Ohio discloses that no such grant has been even attempted. House Bill No. 544, 116 Ohio Laws 580, enacted in 1935, goes no further than to authorize and require the approval of the proper federal authority of a project as to which federal financial aid is to be given, and the making of a proper contract between the political subdivision of the state and the proper federal authority concerning such aid. But that, in the case at bar, goes no further than the approval of, and a contract relative to, the project itself, namely the contemplated improvement of the high school building. It does not extend to a supervision of the discretionary or other power of the board of education in the letting of the contract to the lowest responsible bidder, or the determination as to which of several approved alternates shall be adopted by it. We confine our decision at this time strictly to this one question, within the limitations above defined.

It follows, therefore, that the contract between the board of education and the relators was and is valid, and the board of education is without power to avoid it, either expressly or by implication, without the consent of the relators.

But, this being true, it further follows that, as the relators and the board of education have already entered into this contract, this court by writ of mandamus cannot require the board to do that which it has already done, nor give to relators something which they already possess.

Mandamus is not the appropriate remedy for the enforcement of rights under a contract, but is strictly limited to "commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

The writ, therefore, will be denied at the costs of relator.

Writ denied.

LLOYD and CARPENTER, JJ, concur.